# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| MOTIO, INC. | § | |
| | § | |
| V. | § | CASE NO. 4:12-CV-647 |
| | § | Judge Mazzant |
| AVNET, INC., | § | |
| BSP SOFTWARE LLC and | § | |
| BRIGHTSTAR PARTNERS, INC. | § | |

## MEMORANDUM OPINION

Pending before the Court is Defendants' Motion for Leave to Serve Amended Invalidity Contentions (Dkt. #125). After reviewing the motion, the relevant pleadings, and holding a hearing related to the issue, the Court finds that the motion is granted.

## BACKGROUND

Plaintiff filed suit against Defendant BSP Software LLC ("BSP") alleging patent infringement of United States Patent No. 8,285,678 ("the '678 Patent") on October 10, 2012 (Dkt. #1). Plaintiff filed a First Amended Complaint (Dkt. #11) on December 20, 2012, and a Second Amended Complaint (Dkt. #98) on March 10, 2015. Avnet, Inc. was identified as BSP's parent company on December 5, 2012 (Dkt. #9) and Brightstar Partners, Inc. was accused as marketer and seller of BSP software products on behalf of BSP. *See* Dkt. #11 at p. 2. The three defendants are herein collectively identified as "the Defendants."

On a joint motion, this case was stayed pending settlement on January 6, 2014 (Dkt. #53) but remained unresolved. The case eventually resumed and was twice transferred (Dkts. #77, #86). A new case schedule was put in place on January 20, 2015, and following several modifications, an amended scheduling order was accepted on May 28, 2015 (Dkts. #87, #119). Of relevant note, Defendants originally served their invalidity contentions on May 10, 2013, the

Court conducted a *Markman* hearing on July 29, 2015, and issued a claim construction order on August 21, 2015 (Dkt. #145), the initial exchange of Expert Witness disclosures took place on September 4, 2015, Expert Disclosures for parties not bearing the burden of proof is set for October 15, 2015, discovery is set to close on November 13, 2015, the final pretrial conference is set for January 15, 2016, and trial is set for January 18, 2015 (Dkt. #119). In the current motion, filed July 2, 2015, Defendants ask for leave to amend invalidity contentions for the purpose of incorporating an additional prior art reference to a product called "Hummingbird," and specifically a feature of Hummingbird that Defendants claim provided version control to business intelligence systems as claimed in the '678 Patent (Dkt. #125 at p. 1). Plaintiff filed a response (Dkt. #128) on July 20, 2015, and Defendants filed a reply (Dkt. #138) on July 30, 2015.

**LEGAL STANDARD**

Under the Local Rules for the Eastern District of Texas, Appendix B Patent Rules, leave to amend invalidity contentions "may be made only by order of the court, which shall be entered only upon a showing of good cause." P.R. 3-6(b). 'Good cause,' according to the Federal Circuit, "requires a showing of diligence." *O2 micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006). The court weighs multiple factors in determining whether good cause exists, including, but not limited to:

1. The length of the delay and its potential impact on judicial proceedings;
2. The reason for the delay, including whether it was within the reasonable control of the movant;

3. Whether the offending party was diligent in seeking an extension of time, or in supplementing discovery, after an alleged need to disclose the new matter became apparent;

4. The importance of the particular matter, and if vital to the case, whether a lesser sanction would adequately address the other factors to be considered and also deter future violations of the court's scheduling orders, local rules, and the federal rules of civil procedure; and

5. The danger of unfair prejudice to the non-movant.

*Allure Energy, Inc. v. Nest Labs, Inc.*, 84 F.Supp.3d 538, 540-41 (E.D. Tex. 2015) (quoting *Computer Acceleration Corp. v. Microsoft Corp.*, 481 F.Supp.2d 620, 625 (E.D. Tex. 2007)).

## ANALYSIS

Plaintiff contests Defendants' request for leave to serve amended invalidity contentions, arguing that Defendants have not met the burden of demonstrating "good cause" for leave (Dkt. #128 at p. 4). Defendants argue that under the factors considered by the court, they have shown "good cause." While non-exclusive, the Court will examine each of the five factors listed in *Computer Acceleration* when weighing the merits of Defendants and Plaintiff's assertions.

*The Length of the Delay*

Plaintiff notes that this motion comes over two years after the deadline for invalidity contentions and seventeen months after claim construction briefing closed. Plaintiff argues this "delay" weighs heavily against a showing of "good cause," particularly as this delay is many times greater than delays considered in cases Defendants cite wherein good cause was shown. Plaintiff notes that the time of delay in cases cited by the Defendants can be distinguished from the delay in this matter: in *e-Watch, Inc. v. Apple, Inc.*, No. 2:13-cv-01061-JRG-RSP, Dkt. #230

at p. 2 (E.D. Tex. 2014), leave to amend was sought one month after the deadline for contentions, three months prior to close of claim construction discovery, four months prior to claim construction briefing, and six months before *Markman* hearing; in *Kroy IP Holdings, LLC v. Autozone, Inc., et al.*, No. 2:13-cv-888-WCB, Dkt. #169 at p. 2 (E.D. Tex. 2014), leave was sought 3-4 months after the deadline.

Defendants do not contest that a long period of time has passed since the deadline for invalidity contention. Defendants do point out that this case was stayed for nine months and that there was no delay between their discovery of the relevant information and their diligent action. Nonetheless, a significant period of time has passed since the deadline to serve invalidity contentions and therefore this factor weighs against a showing of good cause.

*The Reason for the Delay, Diligence*

Plaintiff argues that Defendants' explanation for delay is meritless as merely attorney argument without a declaration or support, showing neither the steps taken to support a claim of diligence nor justification for not discovering the Hummingbird products at issue until two years after the due date for invalidity contentions. Plaintiff contends that Defendants' arguments are hollow considering that, as early as 2008, Defendant BSP maintained an online portal for job openings in the business intelligence industry. Plaintiff points to an email from the co-founder of BSP dated May 16, 2008, which listed employees, candidates, and employers Plaintiff states were participating in a BSP employment site titled JobNoise (Dkt. #128 at p. 8). The message lists Hummingbird as a potential business to include in resume and job postings which, in Plaintiff's view, demonstrates that Defendants' delay in investigating and discovering of the items related to the request for leave to amend was caused by a lack of diligence (Dkt. #128 at p. 8; Dkt. #128, Ex. 1). Plaintiff notes that *e-Watch*, cited for support by Defendants, involved a

4

delay at least partially explained by difficulty identifying and translating a foreign-language document. *See* No. 2:13-cv-01061-JRG-RSP, Dkt. #230 at p. 2. Additionally, in *Kroy*, the movant supplemented prior art in response to a new infringement theory, presenting "good cause." *See* No. 2:13-cv-888-WCB, Dkt. #169 at p. 3. Plaintiff argues that here, however, Defendants point to no such justifiable delay or "triggering event." Plaintiff notes, but does not list specifically as an argument, the fact that Defendant Avnet's Gary Evans, a product manager at Avnet, testified in a deposition that he used Hummingbird products at a previous employer during the 1998-2004 timeframe (Dkt. #128 at p. 4).

Defendants state that they could not have been any faster at including the "Hummingbird" reference, because they simply were not aware of the reference and its nature. Defendants speculate that they were not able to identify the reference earlier due to the fact that Hummingbird was acquired by Open Text Corporation in 2006 and components of Hummingbird were discontinued or rebranded (Dkt. #125 at p. 3). Further, Defendants assert that Hummingbird is less familiar that other business intelligence systems and not that Plaintiff appears, due to the fact that it did not disclose Hummingbird in prosecution of the patent at issue, to have been unaware of the reference as well (Dkt. #125 at p. 4). In addition, Defendants argue that they did not delay once they were aware of the reference, but rather, immediately informed Plaintiff of its discovery and provided, that same evening, all relevant documents relating to Hummingbird that Defendants could identify (Dkt. #125 at p. 2). Defendants also contend that the mere listing of Hummingbird on a single e-mail in a list of many companies does not demonstrate that Defendants have not been diligent, nor does the fact that Gary Evans used a Hummingbird product more than ten years ago. Defendants reiterate that Hummingbird is not well-known, evidenced by the fact that only a single e-mail presented mentions Hummingbird

5

and state that "vague knowledge that a product exists is very different from knowledge that it has version control capabilities—which is what would matter to the present case and Avnet's invalidity defense" (Dkt. #138 at p. 1). Defendants note that regardless of Gary Evans' knowledge regarding Hummingbird generally, the product he used while employed did not have version control, an experience which, Defendants argue, would actually lead one away from considering Hummingbird a viable prior art reference that could invalidate the patent at issue. Finally, Defendants explain that, unlike the situation referenced by Plaintiff in *Allure Energy*, the Defendants did not actually know of the reference at issue prior to serving contentions or long before seeking amendment.

The Court agrees that this situation can be distinguished from *Allure Energy* where actual knowledge of the reference could clearly be shown from the testimony of the moving party's expert. Here, the Court agrees with Defendant that the extremely limited connections to Hummingbird (the single email and the testimony of Gary Evans) do not demonstrate a level of knowledge about the reference that would negate a conclusion of diligence or demonstrate a tactical delay. The Court finds the hypothetical justifications for the delay – that Defendants simply did not find the reference previously because it was unpopular or perhaps because the company was acquired and products discontinued – are not particularly persuasive as they are rooted mostly in speculation rather than evidence demonstrating that a search was adequately performed at the proper time. As such, the reason for delay weighs against a showing of good cause. The Court, however, notes that the Defendants' behavior from the time they claim to have become aware of the Hummingbird reference does suggest nothing but the utmost diligence. Defendants, by all accounts, immediately contacted Plaintiff and disclosed as much information about Hummingbird as possible as soon as was possible, and quickly filed this

motion to amend. The Court finds that this behavior is suggestive of diligence and this factor supports a showing of good cause.

*The Importance of the Matter*

Plaintiff argues that the amendment is unimportant, stating that the simplistic analysis Defendants offer does not show importance, and that, under Defendants' characterization of the amendment, Hummingbird is very different from what is claimed in the patent at issue (Dkt. #128 at p. 8).

Defendants argue the importance of the amendment is paramount, as Hummingbird demonstrates that providing version control to a business intelligence system was claimed as early as 2002, far before the filing date of the patent at issue – January 3, 2006 (Dkt. #125 at p. 5). Defendants contend that Hummingbird, then, anticipates or renders obvious all the asserted claims of the patent at issue (Dkt. #125 at p. 5). Defendant argues that the Hummingbird goes beyond what Plaintiff describes is unimportant, specifically that Hummingbird describes *automatic* version control (Dkt. #138 at p. 4).

The Court finds that the Hummingbird reference appears to be exceedingly relevant and may very well be of paramount importance in this matter. A business intelligence system involving version control and descriptions or suggestions that Hummingbird implements version control automatically appears to be absolutely appropriate art to consider in this case. Without making a judgment as to the particular value of the Hummingbird reference, the Court finds that this factor weighs heavily to a showing of good cause. A lesser sanction was not discussed by either party nor does the Court believe that one is necessary.

*The Danger of Prejudice*

Plaintiff cites the inherent prejudice of the sudden introduction of a new prior art reference, particularly where, as here, the prior art consists of multiple products, a large number of pages of production charted in sixty pages of contentions (Dkt. #128 at p. 8). Plaintiff argues that this prejudice is completely unacceptable this late into the litigation. Further, Plaintiff suggests that any importance highlighted by Defendants cuts to show that Defendants should have been more diligent and that amendment would now unfairly prejudice Plaintiff.

Defendants argue that, though this request comes far after the deadline for the service of invalidity contentions, the case had previously been stayed (accounting for nine months of time), and the current schedule for the case allows for ample time for Plaintiff to address the reference. Defendants note that the *Markman* hearing was nearly a month away at the filing of the motion, opening expert reports due slightly more than a month away, responsive experts three months away and discovery would not close until November 13, 2015, nearly four months from the time of the filing of the motion (Dkt. #125 at p. 5). Further, Defendants express a lack of intent to amend or change claim construction positions in light of Hummingbird and orally committed, in a hearing related to this matter on September 11, 2015, not to seek summary judgment on Hummingbird (Dkt. #125 at p. 5). Finally, Defendants contend that even though there is ample time to accommodate the addition of the reference, the existing close of discovery date and trial dates (January 18, 2016) can easily accommodate whatever additional time the Court may find is appropriate to grant in order to allow Plaintiff to properly respond to the reference (Dkt. #125 at p. 6).

Defendants note that they merely seek to add a single prior art product – a single business intelligence system and product configured to have version control (Dkt. #138 at p.2). Further,

though Plaintiff stresses the number of pages produced, Defendants state these come from only forty-eight documents and demonstrate diligence and good faith of their part to produce everything possible on Hummingbird as quickly as possible and nothing more (Dkt. #138 at p. 2).

Defendants state that the reference has no bearing on Plaintiff's opening expert report with regard to infringement issues and, while Defendants would need to incorporate the reference into its opening expert report on invalidity, there is "simply no conceivable prejudice to Motio." (Dkt. #138 at p. 3).

The Court finds that the addition of Hummingbird will not dramatically prejudice Plaintiff. Regarding its value to the case, Plaintiff states that Hummingbird is very different from the patent at issue ("In fact, mere check-in or check-out reports in a business intelligence system is very different than what is claimed in the patent at issue. The amendment is therefore not important.") (Dkt. #128 at p. 8). Plaintiff attempts to argue that the proposed amendment is not important on the one hand, while simultaneously arguing prejudice on the other. This situation mirrors that in *E-Watch*, wherein the court stated that "Plaintiff cannot have it both ways. If Plaintiff believes these references are . . . not relevant to the validity of the patents-in-suit . . . it is not readily apparent from its briefing how Plaintiff could suffer any prejudice." *See* No. 2:13-cv-01061-JRG-RSP, Dkt. #230 at p. 3. Similarly, the Court finds that Plaintiff cannot show prejudice due to the material in the reference while arguing the amendment is unimportant.

The Court, however, does note the potential prejudice caused by the timing of this motion. Though trial is set for January 18, 2016, the *Markman* hearing has now taken place and parties are well into the period of designating expert witnesses. Defendants may have made Plaintiff aware of Hummingbird and their intentions to amend their invalidity contentions some

weeks ago, the process of litigation presents a situation wherein Plaintiff will be forced to adapt to this amendment at a relatively late date. Defendants did orally commit during a hearing that they would not be seeking summary judgment on Hummingbird and here that they will not be seeking different claim constructions. These actions do negate some of the potential for prejudice based on the timing of a late amendment. The Court finds that, considering the many factors and dates at issue, Defendants demonstrate that there will not be substantial prejudice to Plaintiff due to the inclusion of this amendment. The Court finds this factor marginally supports a showing of good cause. The Court does note that some prejudice due to timing may be experienced by the Plaintiff, and should Plaintiff seek relief in the form of requests for necessary extensions of certain pre-trial expert deadlines due to the addition of Hummingbird, the Court is unlikely to look favorably on protestations by the Defendants that relate to the natural consequences of this late amendment.

The Court finds, after considering all factors, that Defendants have demonstrated good cause and should be allowed to amend their contentions.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion for Leave to Serve Amended Invalidity Contentions (Dkt. #125) is hereby **GRANTED**.

**SIGNED this 13th day of October, 2015.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE