# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| MOTIO, INC. | § | |
| | § | |
| V. | § | CASE NO. 4:12-CV-647 |
| | § | Judge Mazzant |
| BSP SOFTWARE LLC, | § | |
| BRIGHTSTAR PARTNERS, INC., | § | |
| and AVENT, INC. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion for Summary Judgment for Invalidity under 35 U.S.C. § 101 (Dkt. #158). After reviewing the relevant pleadings, the Court finds that the motion should be denied.

## BACKGROUND

Plaintiff asserts that Defendants infringe claims of U.S. Patent No. 8,285,678 ("the '678 Patent"). The '678 Patent is titled "Continuous integration of business intelligence software." It was filed on December 30, 2010, and issued on October 9, 2012. The '678 Patent relates to methods of providing automatic version control to a business intelligence system. '678 Patent at Abstract.

Defendants filed a Motion for Judgment on the Pleadings due to Failure to Claim Patent-Eligible Subject Matter under 35 U.S.C. § 101 on June 18, 2015 (Dkt. #121), and an amended motion as a correction on June 19, 2015 (Dkt. #122). Plaintiff filed a response on July 27, 2015 (Dkt. #137). Defendants filed a reply on August 7, 2015 (Dkt. #142), and Plaintiff filed a sur-reply on August 17, 2015.

The present motion raises substantively the same arguments as those previously presented by Defendants with respect to its Rule 12(c) Motion for Judgment on the Pleadings.

*See* Dkt. #158 at p. 1.  Defendants filed the present motion on September 18, 2015 (Dkt. #158).

Plaintiff filed a response on October 13, 2015 (Dkt. #170), and Defendants filed a reply on

November 9, 2015 (Dkt. #195).

## LEGAL STANDARD

*Summary Judgment*

The purpose of summary judgment is to isolate and dispose of factually unsupported

claims or defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment

is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits

"[show] that there is no genuine dispute as to any material fact and that the movant is entitled to

judgment as a matter of law."  FED. R. CIV. P. 56(a).  A dispute about a material fact is genuine

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The trial court must resolve all

reasonable doubts in favor of the party opposing the motion for summary judgment.  *Casey*

*Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations

omitted).  The substantive law identifies which facts are material.  *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine

issue of material fact and that it is entitled to judgment as a matter of law.  *Id.* at 247.  If the

movant bears the burden of proof on a claim or defense on which it is moving for summary

judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the

essential elements of the claim or defense."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th

Cir. 1986).  Where the nonmovant bears the burden of proof, the movant may discharge its

burden by showing that there is an absence of evidence to support the nonmovant's case.

*Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor…unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Computer Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004). Rather, the Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all of the evidence, but must refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

*Patent Eligibility*

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has "long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). Monopolization of these "basic tools of scientific and technological work" through the grant of a patent "might tend to impede innovation more than it would tend to promote it," thereby thwarting the primary object of the patent laws. *Id.* (quoting

*Myriad*, 133 S. Ct. at 2116; *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1298, 1923 (2012)).

The Supreme Court has set forth a framework for determining patent eligibility. *Id.* at 2355. First, the court determines whether the claims at issue are directed towards one of the three patent-ineligible concepts. *Id.* If so, then the court then asks "what else is there in the claims before us?" *Id.* (quoting *Mayo*, 132 S. Ct. at 1296-97). In answering the second question, the court considers "the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* (internal quotations omitted). The second step can be characterized as a search for an "inventive concept"—"an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (quoting *Mayo*, 132 S. Ct. at 1294).

## ANALYSIS

*Step One: Are Claims Directed towards a Patent-Ineligible Concept?*

The Court finds that the asserted claims are directed to the abstract idea of maintaining versions of electronic documents. While the claims are directed toward a particular technological environment—a computer—a particular type of electronic document—report specifications and analysis cubes—and an application in business intelligence systems, this does not change the underlying abstract idea of maintaining versions, or "version control," of electronic documents. *See Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015) ("An abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet."); *Alice*, 134 S. Ct. at 2358 (limiting an abstract idea to a technological environment, such as a computer,

does not confer patent eligibility); *Bilski v. Kappos*, 561 U.S. 593, 612 (2010) ("[L]imiting an abstract idea to one field of use…d[oes] not make the concept patentable.").

The Federal Circuit has stated that "[t]he concept of data collection, recognition, and storage is undisputedly well-known," and that "the idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" is an "abstract idea." *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014). At its core, the concept the '678 Patent is directed toward— maintaining versions of electronic documents—is quite similar. Maintaining versions requires collection, recognition of an item to be copied or saved, and storing of that identified item.

Plaintiff concedes that "[t]he concept of version control in [business intelligence] systems, which is not new, allows a user to maintain all historical versions of content," and that "the broad concept of version control has been known for decades." (Dkt. #170 at pp. 1-2). Plaintiff argues, however, that the '678 claimed version control was new, vastly improves upon what was previously done with computers and the Internet, and solves a computer specific problem (Dkt. #170 at pp. 12-13). Plaintiff contends, in summary, that "the claimed technology of the '678 Patent is more than the abstract idea of version control (or business intelligence) (*Alice* part one)." The Court will subsequently turn to the question of whether the patent "amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 134 S. Ct. at 2355. However, the first step of *Alice* directs the Court to determine the nature of the idea the patent as issue is directed toward. Regardless of whether the '678 Patent amounts to "significantly more," the Court finds the claims of the '678 Patent are directed toward the abstract concept of maintaining versions of electronic documents.

*Step Two: Is There an Inventive Concept Sufficient to Ensure that the Patent Amounts to Significantly More than a Patent upon the Ineligible Concept Itself?*

"[A]n invention is not rendered ineligible for patent simply because it involves an abstract concept," but rather, "application[s] of such concepts 'to a new and useful end'…remain eligible for patent protection." *Alice*, 134 S. Ct. at 2354 (citations omitted). Having concluded that the claims are directed toward an abstract concept, the Court turns to whether the claims contain meaningful limitations that create an "inventive concept." *Mayo*, 132 S. Ct. at 1294. The analysis is not focused on whether the claims preempt the abstract idea completely or not, but rather, the court is to "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim" into a patent-eligible application. *Alice*, 134 S. Ct. at 2354-55 (quotations and citations omitted).

Here, claim 1 recites the following steps: (a) creating an initial business intelligence artifact (a "report specification" or "analysis cube"); (b) providing an "automated agent" that interfaces with the business intelligence system to provide version control to the business intelligence artifact. '678 Patent at 4:46–5:03.

Defendants contend that taking actions "automatically" is purely conventional and does not save the '678 Patent, citing numerous cases of courts invalidating claims that merely "automated" otherwise abstract ideas or conventional computer functions (Dkt. #195 at p. 3) (citing, *e.g., Intellectual Ventures I LLC v. Manufactures and Traders Trust Co.*, 2014 WL 7215193, at *7 (D. Del. Dec. 18, 2014); *Synopses Inc. v. Mentor Graphics Corp.*, 2015 WL 269116, at *4 (N.D. Cal. Jan. 20, 2015); *Hewlett Packard Co. v. ServiceNow, Inc.*, 2015 WL 133244, at *11 (N.D. Cal. March 10, 2015)). The claims at issue, however, do not merely

automate a purely conventional technique or abstract idea, but rather provide an "automated agent." Moreover, in the Court's view the claims are not shown to amount to "significantly more" simply because the automated agent operates "automatically."

Defendants argue that Plaintiff's characterization of report specifications as "complicated and highly technical" is of no moment, both because the claims cover even the most basic of report specifications and because courts have repeatedly held claims directed to complex data manipulation unpatentable (Dkt. #195 at p. 3). The Court agrees that the nature of the report specifications, particularly whether they are complicated or highly technical, is not sufficient to render the claims patentable. *See e.g. CyberSource Corp. v. Retail Decisions, Inc.*, 645 F.3d 1366, 1370 (Fed. Cir. 2011).

Defendants argue that the '678 Patent does not recite an inventive concept beyond the abstract idea, and that the computer-implemented limitations of the patent "merely draw on the generic functionality of pre-existing computer systems" such as creating records, providing an "agent" that interfaces with a business intelligence system (what Defendants describe as "just a form of computer software"), storing the record, and storing subsequent versions of the record (Dkt. #158 at p. 11). Defendants, in essence, point to various pre-existing and conventional concepts and argue that the invention describes nothing more.

In *Alice*, the Supreme Court stated that "we must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more." 134 S. Ct. at 2354 (quotations and citations omitted). Plaintiff identifies the "automated agent" as that "something more." (Dkt. #170 at p. 14). The Court agrees. The Court's claim construction order construed "automated agent" as "software that interfaces with a business intelligence system to provide automated version control to a business intelligence

artifact" (Dkt. #145 at p. 13). This is a far more robust description than Defendants' insistence that the claims merely provide an "agent" which is of "just a form of computer software" that interfaces with a business intelligence system (Dkt. #158 at p. 11). In fact, Defendants' own proposed construction described more than "just a form of software": "software that interfaces with a business intelligence system to provide automated version control to a business intelligence artifact." (Dkt. 145 at p. 7). It is the provision of this automated agent to solve the problem of a business intelligence system lacking native version control that amounts to significantly more than a patent on the idea of maintaining versions of electronic documents itself.

The claims provide, and the Court's construction of the term "automated agent" reflects, that the automated agent is "software that interfaces with the business intelligence system," making clear the distinct nature of the automated agent (Dkt. #145 at p. 13). Though the parties disagree about the level of externality the claims require, the Court finds that it is sufficient to describe the automated agent as software distinct from the business intelligence system. The claims describe an invention that serves as an addition to a business intelligence system rather than claiming a monopoly on all version control systems, particularly version control native to a business intelligence system.

In *DDR Holdings*, the asserted patents claimed a system and method of generating a composite web page that combined certain visual elements of a "host" website with content of a third-party merchant. *DDR Holdings, LLC v. Hotels.com, L.P.*, 733 F.3d 1245, 1249 (Fed. Cir. 2014). In finding that the asserted claims cleared the § 101 hurdle, the Federal Circuit noted that the claims did not recite a mathematical algorithm or a fundamental economic practice. *Id.* at 1257. The Federal Circuit determined that, though the claims might be characterized as an

8

allegedly abstract idea, they satisfied step two of the test described in *Alice*, standing apart "because they [did] not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id*.

Though the claims in the '678 Patent do not specifically disclose operation on a computer network, the Court finds that the logic of *DDR Holdings* applies. "A simple instruction to apply an abstract idea on a computer is not enough." *Intellectual Ventures I*, 792 F.3d at 1367 (citing *Alice*, 134 S. Ct. at 2358). Plaintiff argues, and the Court agrees, that as in *DDR Holdings*, the invention does not simply use a computer to automate was done previously, but rather improves upon what was previously done with computers, solving a computer specific problem (Dkt. #170 at p. 12). The patent-at-issue expands the functionality of existing computer software, local or on a computer network, by addressing a problem specific to the realm of computers.

Moreover, the '678 Patent does not claim version control generally, but rather a specific method, using an "automated agent" distinct from a business intelligence system to improve the functionality of a business intelligence system. Therefore, the claims describe a particular method of providing one type of version control that does not preempt every application of the idea of maintaining versions of electronic documents or even all methods of version control in a business intelligence system.

As the Federal Circuit has noted, "[d]istinguishing between claims that recite a patent-eligible invention and claims that add too little to a patent-ineligible abstract concept can be difficult, as the line separating the two is not always clear." *DDR Holdings*, 773 F.3d at 1255. While the broad concept of maintaining versions of electronic documents is not in and of itself

patentable, the claims of the '678 Patent describe a non-conventional method, by providing an "automated agent" distinct from a business intelligence system to provide a type of version control. This meaningfully limits the abstract idea of maintaining versions of electronic documents. Here, at the very least, the '678 Patent discloses a particular solution for the problem of providing a particular form of version control to a business intelligence system that does not provide native, automatic version control. Accordingly, the Defendants failed to show that the claims of the '678 Patent are ineligible for patent protection.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion for Summary Judgment for Invalidity under 35 U.S.C. § 101 (Dkt. #158) is hereby **DENIED**.

**SIGNED this 4th day of January, 2016.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE