# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| MOTIO, INC. | § | |
| | § | |
| V. | § | CASE NO. 4:12-CV-647 |
| | § | Judge Mazzant |
| BSP SOFTWARE LLC, | § | |
| BRIGHTSTAR PARTNERS, INC., | § | |
| and AVENT, INC. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Exclude the Expert Report and Testimony of Arthur H. Cobb (Dkt. #187). After reviewing the relevant pleadings, the Court finds that the motion should be denied.

## BACKGROUND

Plaintiff asserts that Defendants infringe claims of U.S. Patent No. 8,285,678 ("the '678 Patent"). The '678 Patent is titled "Continuous integration of business intelligence software." It was filed on December 30, 2010, and issued on October 9, 2012. The '678 Patent relates to methods of providing automatic version control to a business intelligence system. '678 Patent at Abstract. Plaintiff filed suit for infringement of the '678 Patent on October 10, 2012 (Dkt. #1).

Arthur Cobb ("Mr. Cobb") authored and presented an analysis of Motio's estimated damages related to Defendants' alleged infringement of the '678 Patent. Mr. Cobb is expected to offer testimony at trial (Dkt. #187, Ex. A at pp. 1–2).

On October 27, 2015, Defendants filed the present motion to strike Mr. Cobb's report and testimony (Dkt. #187). Plaintiff filed a response on November 13, 2015 (Dkt. #200). On November 23, 2015, Defendants filed a reply brief (Dkt. #207), and on December 3, 2015, Plaintiff filed a sur-reply (Dkt. #212).

1

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharm., Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Moreover, in order to be admissible, expert testimony must be "not only relevant by reliable." *Daubert*, 509 U.S. at 589. This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the court should consider numerous factors. *See Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or

2

technique is generally accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not a definitive checklist or test." *Daubert*, 509 U.S. at 593. As the Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *See Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

Defendants argue that Mr. Cobb's opinion regarding lost profits relies on an "unsupported, and speculative, assumption" that Motio and BSP control 95% of the market (Dkt. #187 at p. 5). Defendants note that Mr. Cobb acknowledged there are other competitors that provide competing products and yet still made conclusions based on the 95% figure (Dkt. #187 at p. 6).

Plaintiff notes that Mr. Cobb did not merely base his opinion upon the 95% market ownership figure at face value, but rather, states where he obtained this figure, explains that his independent analysis of other potential competitors leads him to discount their presence, and further gave him no reason not to assume that the 95% figure provided to him, and presented in his report, was accurate (Dkt. #200 at p. 7). However, Plaintiff highlights that Mr. Cobb prepared and provided other lost profits figures for the circumstance that the finder of fact determines that 95% market share is incorrect, specifically calculations assuming an 85% market share and a 75% market share (Dkt. #200 at pp. 7–8). The Court finds that Mr. Cobb makes no

expert assertion that the 95% figure is correct, and is not being presented to prove a market share figure. Rather, he simply relies upon the figure presented by Motio management as a reasonable assumption, and, even accounts for circumstances where the fact finder finds that 85% or 75% is more appropriate.

Defendants assert that, even if 95% of the market was controlled by Motio and BSP, it does not necessarily follow that "but for" infringement, Motio would have received any additional profits (Dkt. #187 at p. 8). Further, Defendants contend that Mr. Cobb failed to perform a market reconstruction analysis, claiming that the Federal Circuit's decision in *Grain Processing Corp. v. Am Maize-Prods.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999) requires a market reconstruction analysis for any lost profits opinion (Dkt. #207 at p. 1).

Plaintiff states that the Federal Circuit does not require a complete market reconstruction for a two-supplier market, and he argues that this is effectively a two-supplier market (Dkt. #212 at p. 1) (citing *Lam, Inc. v. Johns–Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983)). Plaintiff argues that focus of Defendants' motion is not an attack on Mr. Cobb's opinions, his qualifications, or his methodologies, but rather, an accusation against the facts upon which Mr. Cobb bases his opinions (Dkt. #200 at pp. 5–6). Plaintiff contends that this is an argument appropriate at trial, but should not constitute a *Daubert* motion (Dkt. #200 at p. 6).

The Court agrees, and finds that, under the factual assumption Mr. Cobb bases his opinion on—that this is effectively a two-supplier market—it is reasonable to assume causation. Further, Mr. Cobb did not arbitrarily determine the 95% figure, but did conduct an independent analysis to determine that the figure wasn't clearly unreasonable.

Defendants contest Mr. Cobb's approximation of a royalty rate of 75%, claiming the figure is not tied to the facts of the case and has no relation to the patented technology at issue,

4

and is, rather, merely arbitrary (Dkt. #187 at p. 10). Plaintiff argues that Mr. Cobb's opinion regarding a reasonable royalty is properly premised upon the *Georgia Pacific* factors (Dkt. #200 at pp. 13–14; Dkt. #212 at pp. 3–4). Plaintiff notes that the end result of a hypothetical negotiation is, by its very definition, unable to be known with certainty, but that his estimation was based on the relevant factors (Dkt. #212 at p. 4). Plaintiff explains that, "[i]n reality, Motio would have little or no incentive to discount a royalty to provide patented technology to its only competitor, particularly given that the products at issue are highly profitable," and that his royalty rate of 75% is appropriate given that direct competition over the same finite number of customers (Dkt. #200 at p. 14) (citing Dkt. #187, Ex. A at p. 33).

The Court notes that reliability and validity do not require certainty, but there must be evidence that the knowledge is more than mere speculation of the expert witness. *Daubert*, 509 U.S. at 590. The Supreme Court noted that "it would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are no certainties in science." *Id.* Here the Court finds that Mr. Cobb reached his opinions based upon his knowledge, training, and experience and application of the *Georgia Pacific* factors.

Defendants further argue that Mr. Cobb's application of the "entire market value" rule in calculating lost profits and reasonable royalty is unsupported by any demonstration that the patented technology is the basis for demand, simply assuming that this is the case (Dkt. #187 at p. 12). Defendants contend that, therefore, Mr. Cobb's analysis is based "on speculation and conjecture," is not reliable, and should be excluded (Dkt. #187 at p. 13). Plaintiff notes that Mr. Cobb states in his report that he <u>assumes</u>, for the purposes of his opinions, that the technology encompassed by the '678 Patent is the essential driver behind demand for Defendants' ICS and IVC products and that this assumption is not inappropriate, particularly as it is drawn from the

5

deposition testimony of one of the Defendants' witnesses, Andrew Weiss (Dkt. #200 at p. 15) (citing Dkt. #187, Ex. A at p. 9). The Court acknowledges Mr. Cobb's assumption and does not find that Mr. Cobb's assumption was unsupported or that his analysis is unreliable.

Again, Defendants attempt to challenge the factual basis upon which Mr. Cobb calculates damages, but the Court's gate-keeping function under *Daubert* is not intended to replace the adversarial system and the jury's responsibility to evaluate and weigh the evidence presented by each party's experts. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *see also United States v. 14.38 Acres of Land Situated in Leflore Cty., Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996) (The trial court must act "with proper deference to the jury's role as the arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."). Defendants do not question Mr. Cobb's qualifications or calculations or methodology, but simply challenges the reliability of Mr. Cobb's opinions.

The Fifth Circuit has noted that a court "must bear in mind the purpose of [the expert's] testimony when addressing its reliability." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). The purpose of Mr. Cobb's testimony is "to develop methods to estimate Motio's damages and to estimate Motio's damages related to BSP's alleged infringement of the '678 Patent." (Dkt. #187 at p. 2). The Court finds that, considering the purpose of the testimony is to make estimations of damages, certain underlying factual assumptions are appropriate and Mr. Cobb's report is relevant and sufficiently reliable. As previously stated, the Court's role as a gate-keeper should not invade upon the trier fact's role in making credibility determinations at

6

trial. *See Daubert*, 509 U.S. at 596. The Court makes no determination on the merits of Defendants' challenges to the factual assumptions, but recognizes that these particular challenges would be more appropriately presented to the trier of fact, rather than the Court under a *Daubert* challenge.

Finally, Defendants ask the Court to exclude testimony of Avnet's total sales from 2012 through 2014 despite the fact that his damages analysis does not rely on these revenues (Dkt. #187 at p. 14). Defendants argue that Avnet's total sales are mainly attributable to "the distribution of electronic components" which has no connection to the accused technology or the asserted patent (Dkt. #187 at p. 14). Defendants cite the Federal Circuit for the proposition that "a patent owner should not be permitted to reference the total revenue earned by a defendant where that revenue is unrelated to patented technology at issue." (Dkt. #187 at p. 14). In *Uniloc*, the Federal Circuit described the "danger of admitting consideration of the entire market value of the accused where the patented component does not create the basis for customer demand….The disclosure that a company has made $19 billion dollars revenue from an infringing product cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011). Defendants' contend that Mr. Cobb's opinion is needlessly prejudicial, that he need not present the total sales figure, but could offer his opinion by comparing profit margins as percentages without discussing the dollar amount of Avnet's total revenues (Dkt. #207 at p. 5).

Plaintiff argues that Mr. Cobb's reference to Defendants' total sales is appropriate as part of his determination of Defendants' gross profit in furtherance of his analysis that a 75% reasonable royalty figure would still leave Defendants with a profit "more than two times the Gross Profit" reported by Defendants in 2012, 2013, and 2014 (Dkt. #200 at p. 16) (citing Dkt.

7

#187, Ex. A at p. 33). Plaintiff contends Defendants make no *Daubert* argument regarding the use of Defendants' total sales, and that such an argument would be more properly advanced as a motion *in liminie* (Dkt. #200 at p. 16). The Court makes no judgment as to whether presentation of Defendants' total sales is appropriate in the form presented, but does find that Mr. Cobb relies upon the total sales appropriately as part of his analysis of reasonable royalty. The Court further agrees with Plaintiff that the argument regarding prejudice and alternative methods of referencing total sales by Defendants is more properly advanced as a motion *in liminie*.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Exclude the Expert Report and Testimony of Arthur H. Cobb (Dkt. #187) is hereby **DENIED**.

**SIGNED this 8th day of January, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE