# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

MOTIO, INC.             §
                            §
V.                            §         CASE NO. 4:12-CV-647
                            §         Judge Mazzant
BSP SOFTWARE LLC,       §
BRIGHTSTAR PARTNERS, INC.,   §
and AVNET, INC.          §

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendants' Renewed Motions for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b) (Dkt. #290), Plaintiff's Motion to Declare Case Exceptional and Award Attorneys' Fees, and Pre and Post-Judgment Interest (Dkt. #296), Plaintiff Motio, Inc.'s Motion to Approve Disputed Costs (Dkt. #300), and Motio, Inc.'s Motion for Permanent Injunction (Dkt. #297).

## PROCEDURAL AND FACTUAL BACKGROUND

On October 10, 2012, Motio, Inc. ("Motio") filed its action against BSP Software LLC asserting infringement of United States Patent No. 8,285,678 ("the '678 Patent") entitled "Continuous Integration of Business Intelligence Software" (Dkt. #1). On December 20, 2012, Motio filed a First Amended Complaint against BSP Software, LLC and Brightstar Partners, Inc. (Dkt. #11). On March 10, 2015, Plaintiff filed a Second Amended Complaint against BSP Software LLC, Brightstar Partners, Inc., and Avnet, Inc. (collectively "Defendants") (Dkt. #98). The Court held a Claim Construction Hearing on July 29, 2015, and issued a Claim Construction Order on August 21, 2015 (Dkt. #145).

At trial, Plaintiff asserted that Defendants infringed claims 1-3 of the '678 Patent. The '678 Patent was filed on December 30, 2010, and issued on October 9, 2012. The '678 Patent

relates to methods of providing automatic version control to a business intelligence system. '678 Patent at Abstract. Business intelligence systems are used to gather, store, analyze, and report on business metric data, such as factory production, personnel productivity in a manufacturing facility, or trends in sales in a retail store environment. *Id.* at 1:28–35. The specification states that "[t]he purpose of the invention is to continuously monitor, verify, and report on the business intelligence software." *Id.* at 4:31–32. The specification adds that "[t]his is done via an automated agent that executes one or more test cases that are comprised within a test suite." *Id.* at 4:32–34. The specification further states that "[t]he invention also automatically stores versions of the work done by the business intelligence software user." *Id.* at 4:34–36. The specification indicates that "[t]he method utilizes a source control system to record and maintain current and historical versions of the business intelligence artifacts during the development or revision of the business intelligence artifacts." *Id*. at 3:41–44.

Claim 1 of the '678 Patent follows:

> 1. In a general purpose computer, a method for providing automatic version control to a business intelligence system, comprising:
>
> creating an initial version of a business intelligence artifact in the business intelligence system, wherein the business intelligence artifact is a user-authored object that produces output when the business intelligence artifact is executed in the business intelligence system, and wherein the business intelligence artifact is selected from the group consisting of: a report specification and an analysis cube;
>
> providing an automated agent that interfaces with the business intelligence system to provide automated version control to the business intelligence artifact; the automated agent independently performing the steps of:
>
> automatically storing the initial version of the business intelligence artifact with a version control system;
>
> detecting a request to the business intelligence system to modify the initial version of the business intelligence artifact to create a subsequent version of the business intelligence artifact that includes the requested modification; and
>
> automatically storing the subsequent version of the

business intelligence artifact in the version control system.

The trial of this case began on January 19, 2016. At the close of Plaintiff's case-in-chief, Defendants made a motion for judgment as a matter of law, in which they requested that the Court grant judgment as a matter of law in their favor, as Plaintiff had not proved its case. The Court denied Defendants' motion. On January 27, 2016, Defendants filed their Motion for Judgment as a matter of law (Dkt. #255). On January 28, 2016, the jury rendered its verdict and found the following:

(1) that Motio proved, by a preponderance of the evidence: (i) that an end user performed every step of the methods in Claims 1, 2, and 3 in the United States; (ii) that integrated version control ("IVC") was a material component in infringing the method; (iii) that IVC has no substantial, noninfringing use; and (iv) that Defendants were aware of the '678 patent and knew that the IVC product was covered by a claim of the '678 patent;

(2) that Motio proved, by a preponderance of the evidence: (i) that an end user directly infringed Claims 1, 2, and 3 of the '678 patent by performing every step of Claims 1, 2, and 3 using the IVC product in the United States; (ii) that Defendants took action during the time the '678 patent was in force intending to cause infringement by the end user; and (iii) that Defendants were aware of the '678 patent and knew that its actions, if taken would constitute infringement of a valid patent;

(3) that Defendants did not prove, by clear and convincing evidence that the specification of the '678 patent does not contain an adequate written description of Claim 1 of the '678 patent;

(4) that Defendants did not prove, by clear and convincing evidence, that Claim 1 of the '678 patent was anticipated;

and (5) that Defendants did not prove, by clear and convincing evidence, that Claim 1 of the '678 patent would have been obvious to a person of ordinary skill in the field (Dkt. #263).

The jury calculated that Plaintiff proved, by a preponderance of the evidence, $1,095,807.30 in lost profits as a result of sales that it would with reasonable probability have made but for Defendants' infringement, and a reasonable royalty of $129,148.57 (Dkt. #263).

On March 21, 2016, Defendants filed a Renewed Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b) (Dkt. #290). On April 21, 2016, Plaintiff filed a response (Dkt. #306). On May 19, 2016, Defendants filed a reply (Dkt. #314). On June 8, 2016, Plaintiff filed its sur-reply (Dkt. #322).

On March 31, 2016, Plaintiff filed a Motion to Declare Case Exceptional and Award Attorneys' Fees, and Pre and Post-Judgment Interest (Dkt. #296). On May 11, 2016, Defendants filed an opposition (Dkt. #312). On June 3, 2016, Plaintiff filed a reply (Dkt. #319). On June 29, 2016, Plaintiff filed a sur-reply (Dkt. #324).

On April 13, 2016, Plaintiff filed a Motion to Approve Disputed Costs (Dkt. #300). On May 2, 2016, Defendants filed an opposition (Dkt. #310).

On March 31, 2016, Plaintiff filed Plaintiff Motio, Inc.'s Motion for Permanent Injunction (Dkt. #297). On May 11, 2016, Defendants filed an opposition (Dkt. #311). On June 8, 2016, Plaintiff filed a reply (Dkt. #321). On June 29, 2016, Defendants filed a sur-reply (Dkt. #323).

## LEGAL STANDARD

"A motion for judgment as a matter of law… in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Ford v. Cimarron Ins. Co., Inc.*, 230 F.3d 828, 830 (5th Cir. 2000) (quoting *Jones v. Kerrville State Hosp.*, 142 F.3d 263,

265 (5th Cir. 1998) (quoting *Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir. 1997)) (internal

citations omitted). Judgment as a matter of law is only appropriate when "a reasonable jury

would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R.

CIV. P. 50(a). "If the court does not grant a motion for judgment as a matter of law made under

Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's

later deciding the legal questions raised by the motion." FED. R. CIV. P. 50(b). Therefore, a

movant may file a renewed judgment as a matter of law, which may include an alternative or

joint request for a new trial under Rule 59, "[n]o later than 28 days after the entry of judgment."

*Id.*. "[A] jury verdict must be upheld, and judgment as a matter of law may not be granted,

unless 'there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury

did.'" *Fractus, S.A. v. Samsung Elec. Co., Ltd.*, 876 F. Supp. 2d 802, 813 (E.D. Tex. 2012)

(citing *Hiltgen v. Sumrall*, 47 F.3d 695, 700 (5th Cir. 1995)). The jury's verdict must be

supported by "substantial evidence" in support of each element of the claims. *Am. Home

Assurance Co. v. United Space All.*, 378 F.3d 482, 487 (5th Cir. 2004).

"A court reviews all evidence in the record and must draw all reasonable inferences in

favor of the nonmoving party; however, a court may not make credibility determinations or

weigh the evidence, as those are solely functions of the jury." *Fractus*, 876 F. Supp. 2d at 813;

*see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-151 (2000). "The moving

party is entitled to judgment as a matter of law, 'only if the evidence points so strongly and so

overwhelmingly in favor of the [] moving party that no reasonable juror could return a contrary

verdict.'" *SSL Servs., LLC v. Citrix Sys., Inc.*, 940 F. Supp. 2d 480, 486 (E.D. Tex. 2013)

(quoting *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (alteration in original, citation

omitted)).

"The court may, on motion, grant a new trial on all or some of the issues[.]" FED. R. CIV. P. 59(a)(1). "[I]f the trial judge is not satisfied with the verdict of a jury, he has the right—and indeed the duty—to set the verdict aside and order a new trial." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (citation omitted). In ruling on a motion for new trial, the jury's verdict may not be lightly set aside. *See Ellis v. Weasler Eng'g, Inc.*, 258 F.3d 326, 343 (5th Cir. 2001) ("[C]ourts 'must attempt to reconcile the jury's findings, by exegesis, if necessary, before we are free to disregard the jury's verdict and remand the case for a new trial.'"). "In considering whether the seemingly inconsistent verdicts may be reconciled, the court must view the evidence in the light most favorable to upholding the jury's decision by a finding of consistency." *Id; see Hiltgen*, 47 F.3d at 701.

A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). The Fifth Circuit "has held that such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* at 479 (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). A motion to alter or amend judgment may be granted on grounds including: (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct clear error or manifest injustice. *See In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002). Although courts have a great deal of discretion in ruling on a 59(e) motion, it is "an extraordinary remedy that should be used sparingly[.]" *Templet*, 367 F.3d at 479.

**ANALYSIS**

*Renewed Motion for Judgment as a Matter of Law*

Defendants request that the Court enter judgment against Plaintiff for the following reasons: (1) Plaintiff did not prove contributory or induced infringement; (2) Plaintiff did not prove infringement; (3) Defendants demonstrated lack of written description support under 35 U.S.C. § 112; (4) Defendants demonstrated invalidity under 35 U.S.C. § 102(b); (5) Defendants demonstrated invalidity due to obviousness under 35 U.S.C. § 103; (6) Defendants demonstrated invalidity due to failure to claim patent-eligible subject matter under 35 U.S.C. § 101; and (7) Plaintiff did not present sufficient evidence to support the damages award.

*Non-Infringement – Contributory or Induced*

Defendants move for judgment as a matter of law on non-infringement based on a lack of evidence of an end user directly infringing the '678 patent and insufficient evidence to demonstrate that Defendants intended to cause infringement. After withdrawing claims of direct infringement by Defendants, Plaintiff entered trial merely accusing Defendants of indirect infringement. Indirect infringement requires an underlying act of direct infringement. *See Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004). A plaintiff asserting indirect infringement must demonstrate instances of direct infringement or that the accused device necessarily infringes the patent-in-suit. *See ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007). Defendants contend that Plaintiff failed to present any evidence at trial that Defendants' accused products were ever actually used by a single entity in the United States, or in the specific manner that implicates Claim 1 (Dkt. #290 at pp. 4-5). Further, Defendants state that Plaintiff failed to prove that use of the accused products necessarily performs the claimed method (Dkt. #290 at p. 5).

Plaintiff counters that it identified two customers who used the IVC product to version report specification—Bank of America and Boeing—through the testimony of Mr. Moore regarding his "personal knowledge regarding Bank of America and Boeing (Trial Tr. 1/20/2016 AM at 31:24-32:4). Plaintiff also insists that witnesses described the use of IVC by Defendants' customers, in particular Andrew Weiss, Gary Evans, Dr. Jack Grimes and Russell Parr (Dkt. #306 at p. 4).

Dr. Grimes explained how a user of IVC would use the product and implicate Claim 1. Dr. Grimes addressed how the user could infringe the accused method of Claim 1, and how the operation would work from the standpoint of a specific user (Trial Tr. 1/26/2016). Plaintiff claims that it would be "more than reasonable to conclude that Dr. Grimes would not have stated this unless he had knowledge relating to how users of IVC actually used the product." (Dkt. #306 at p. 5). Mr. Weiss testified as to "how" users of IVC practice the method of Claim 1 (Dkt. #306 at p. 5; Trial Tr. 1/22/2016 AM at 39:2-4, 39:8-11). Mr. Evans testified that purchasers of Defendants' Integrated Control Suite ("ICS") product must purchase version control as part of IVC (Dkt. #306 at p. 6; Trial Tr. 1/21/2016 PM at 110:9-16). Plaintiff argues that, in light of Mr. Weiss and Dr. Grimes' testimonies on how an end user actually uses the product, it is "reasonable for a jury to therefore conclude that at least one of the purchasers of IVC practices the very method presented to the jury by Mr. Weiss and Dr. Grimes." (Dkt. #306 at p. 7).

Mr. Parr testified that his analysis assumed that IVC's customers used the product (Trial Tr. 1/27/2016 AM at 13:4-5). Further, he testified that his analysis assumed that if a customer buys IVC they are actually using the product and that this assumption was reasonable based upon documents from the Defendants that he had reviewed (Trial Tr. 1/27/2016 AM at 13:6-12).

Peter Martin described, in his infringement analysis, how he referred to the installation and user manuals for ICS/IVC and the ways in which they described to theoretical customers how to install IVC within Cognos and how a theoretical user was expected to operate the product (Trial Tr. 1/20/2016 PM at 86:14-87:3). Mr. Martin stated his belief that "If purchasers of IVC install and operate the software, then they practice all limitations." (Trial Tr. 1/27/2016 PM at 30:11-12). However, Mr. Martin also stated that a person who purchased IVC, and used it with query objects rather than report specifications and analysis cubes, "[t]heir use of query objects alone would not be sufficient to practice the invention." (Trial Tr. 1/27/2016 PM at 31:3-14).

The Court acknowledges that the evidence of an end user who infringed the '678 Patent is very scant. The Court notes that Mr. Moore testified, specifically, that Boeing stopped using Avnet's IVC product and switched to MotioCI (Trial Tr. 1/20/2016 AM at 31:24-32:4). Further, when Mr. Moore was questioned about Boeing being a MetaManager customer, Mr. Moore stated that he believes Boeing was also an IVC customer, based on intel from Boeing (Trial Tr. 1/20/2016 PM at 20:20-21:7). Defendants did not produce documentary evidence to contradict Mr. Moore's testimony. Although the Court recognizes that purchases of a product do not definitively demonstrate that an end user practices an infringing method, considering the testimony of the individuals together, the Court finds sufficient support for upholding the jury's conclusion that an end user actually performed the patented method.

Defendants also argue that Plaintiff failed to show that the Defendants took affirmative actions to encourage infringement *with knowledge that the induced acts constitute infringement.* Defendants contend that there was not a single bit of evidence of intent to cause infringement (Dkt. #290 at p. 9). Defendants cite case law that supports for the proposition that sales of a product prior to the issuance of a patent cannot be used to prove inducement to infringe after the

patent issues. *See National Presto Indus., v. The West Bend Co.*, 76 F.3d 1185, 1196 (Fed. Cir. 1996). Here, evidence of sales prior to the issuance of the '678 Patent was not necessarily relied upon to determine intent to cause infringement. The Court finds that the jury could consider the evidence, including allegations of Defendants' copying and continued actions after the issuance of the '678 Patent, as relevant in determining whether or not Defendants possessed the intent to cause infringement. The Court does not find a sufficient basis to overturn the jury's conclusion that Defendants indirectly infringed Claims 1, 2, and 3 of the '678 Patent.

*Non-Infringement – Literal Infringement*

Defendants move for judgment as a matter of law that the asserted Claims 1-3 of the '678 Patent are not literally infringed. Plaintiff did not allege infringement under the doctrine of equivalents, but instead focused on literal infringement (Dkt. #226 at p. 3). Literal infringement requires that "every limitation set forth in a claim [] be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995).

Defendants contend that the accused product does not "detect a request . . . to modify" as required by the asserted claims and that the only evidence of this limitation was an "equivalent" that cannot demonstrate literal infringement (Dkt. #290 at pp. 10-14). Plaintiff counters that Mr. Martin explained to the jury that the source code of IVC shows that the IVC filter detects a request to save the report specification, and that a report specification is only modified once it is stored in the Content Store (Trial Tr. 1/21/2016 AM at 18:18-19:2; 1/27/2016 AM at 78:11-13). Plaintiff asserts that Mr. Martin's use of the word "equivalent" did not invoke "the doctrine of equivalents," but rather, his testimony was that detecting a request to save *is* detecting a request to modify. Plaintiff argues that he was not stating, "as is the case with the doctrine of equivalents, that this limitation is completely missing from IVC but that a save request is

equivalent to detecting a request," and that he explained that "a save request is a request to modify." (Dkt. #306 at pp. 14-15). Plaintiff further contends that the testimony of Mr. Weiss confirmed Mr. Martin's testimony regarding how Cognos handles a save (Dkt. #306 at pp. 15-16). The Court agrees that Mr. Martin's use of the word "equivalent" need not be considered a concession of literal infringement or an assertion of the doctrine of equivalents. The Court finds that viewing the evidence in the light most favorable to upholding the jury's decision, it was reasonable for the jury to conclude that the accused product meets the claim limitation "detecting a request to the business intelligence system to modify."

Defendants argue that the accused product does not meet the claim limitation "providing an automated agent that interfaces with the business intelligence system" (Dkt. #290 at p. 14). Defendants contend that the accused "automated agent" in the accused product is part of the business intelligence system, and therefore cannot, as a matter of law, "interface with" the business intelligence system (Dkt. #290 at p. 14). Defendants contend that this results in a "grammatical inconsistency," arising only because the claim is being applied to a system that it does not literally cover (Dkt. #290 at p. 17).

Plaintiff counters that Mr. Martin's analysis of the IVC source code explained that it provides CMFilter, which interfaces with the business intelligence system (Trial Tr. 1/20/2016 PM at 115:3-8, 11-15) (". . . CMFilter and the code contained within it is Avnet BSP's filter code."). Plaintiff calls attention to the testimony of Mr. Martin regarding the communication between the CMFilter of IVC and the business intelligence system Cognos:

> Q. Can you explain how the automated agent interfaces with the business intelligence system? A. Yes, I can. . . . Cognos provides a capability for additional filters to be included. And when those filters are included, that is, they're installed with the business intelligence systems and they're considered incorporated within the business intelligence system once it's up and running, those filters can communicate with the Cognos BI system. . . . They get the

> messages, and so that—that constitutes being interfaced because the software in the module can be invoked from the Cognos system. The software is invoked when it receives a message and it goes on to be able to process that message. So that constitutes being interfaced.

(Trial Tr. 1/27/2016 AM at 69:8-70:10). The Court finds that the jury could have rejected Defendants' non-infringement contention and reasonably adopted the testimony of Mr. Martin that the accused products meet the limitation of "providing an automated agent that interfaces with the business intelligence system." The jury need not fully accept the testimony of Defendants' expert Dr. Grimes for their verdict to be considered reasonable, and as Plaintiff notes, the jury's decision to discount his analysis to some degree is more than reasonable given that he testified that he did not review the entirety of the source code related to the "the Cognos software is (sic) executing, as well as the CMFilter and the IVC filter and so forth." (Trial Tr. 1/26/2016 AM at 72:25-73:8).

Defendants argue that the accused product does not meet the claim limitation "provide automated version control" (Dkt. #290 at p. 17). Defendants argue that the accused products require manually clicking a button, that manually clicking a button is not "automated," and that, therefore, no reasonable jury could find that the accused products provide "automated version control" (Dkt. #290 at p. 19).

Plaintiff contends that it demonstrated at trial that "the IVC product contains an automated agent 'to provide automated version control to the business intelligence artifact.'" (Dkt. #306 at p. 17). Plaintiff argues that it presented substantial evidence at trial that the manual check-out and check-in functionality Defendants discuss is different from the Cognos save button (Dkt. #306 at p. 18). Plaintiff cites the testimony of Dr. Grimes and Mr. Weiss for statements that the manual check-out and check-in functionality is different than the save process of the '678 Patent (Trial Tr. 1/26/2016 AM at 91:12-24; 1/22/2016 AM at 69:9-14).

Mr. Martin testified that the process employed by IVC, saving a report specification as a version in the IVC database is automatic; essentially, that the "automatic" aspect referred to the process that happens without the user's awareness or input rather than the actual question of whether or not a user ever has to click a native save button (Trial Tr. 1/21/2016 AM at 66:17-67:4; 1/27/2016 AM at 72:8-74:1). The Court finds that a reasonable jury could find, considering the testimony presented, that the claim limitation to "provide automated version control" was met.

Accordingly, all of Defendants' arguments regarding non-infringement are insufficient, and Defendants' motion for judgment as a matter of law of non-infringement is denied.

*Invalidity – Obviousness, Written Description*

Defendants move for judgment as a matter of law of invalidity under 35 U.S.C. § 103 asserting obviousness and under 35 U.S.C. § 112 asserting lack of written description support. For each limitation, Defendants presented evidence at trial that the asserted claim was obvious. *See* Trial Tr. 12/25/2016 PM at 63:2-83:6 (Dr. Grimes' discussion of obviousness in light of Hummingbird prior art reference); Trial Tr. 1/26/2016 AM at 10:6-33:9 (Dr. Grimes' discussion of obviousness in light of the combination of Hummingbird with Gentner). However, Plaintiff also presented evidence at trial to rebut the invalidity contentions regarding the references. *See* Trial Tr. 1/19/2016 PM at 85:24-87:11 (Mr. Moore's discussion regarding manual check-in and check-out processes); Trial Tr. 1/21/2016 AM at 38:21-39:24; 1/27/2016 AM at 92:20-93:19 (Mr. Martin's discussion that Hummingbird was a manual check-in process rather than "automatic"); Trial Tr. 1/27/2016 AM at 95:23-96:8 (Mr. Martin's testimony that Hummingbird did not have several elements of the asserted claims, including an automated agent); Trial Tr. 1/27/2016 AM at 99:18-100:16; 101:10-12 (Mr. Martin's testimony that Gentner did not detect a

request to modify and could not be combined with Hummingbird to bring additional functionality, and even in combining Gentner with Hummingbird would not result in a system having an automated agent that detects a request to modify as described in the asserted claims).

The same may be said for Defendants' written description arguments. *See* Trial Tr. 1/25/2016 PM at 59:7-15 (Dr. Grimes' testimony that "detecting a request . . . to modify" is neither explicitly nor inherently disclosed in the specification); Trial Tr. 1/20/2016 AM at 80:7-81:8 (Mr. Moore's testimony that Figure 2 of the '678 Patent shows "detecting a request . . . to modify").

At trial, the jury was given the opportunity to hear and weigh the evidence presented by both sides and found that the claims were not invalid. Defendants fail to present clear and convincing evidence that a reasonable jury could not have upheld the asserted claims as valid. The jury's findings in this regard were supported by sufficient evidence, and Defendants fail to show reason to disturb the jury's findings. Therefore, Defendants' motion for judgment as a matter of law on invalidity due to obviousness or lack of support in the written description is denied.

*Invalidity – Public Use*

Defendants move for judgment as a matter of law of invalidity under 35 U.S.C. § 102(b) due to the public use of MotioCI over a year before the '678 Patent application was filed. Defendants argue that the '678 is not entitled to claim a filing date of U.S. Patent App. No. 11/324,603 filed on January 3, 2006, which became U.S. patent No. 7,885,929 (the '929 Patent) (Dkt. #290 at p. 24). Defendants contend that Plaintiff failed to meet its burden of production to prove at trial that the claims of the '678 Patent are inherently supported by the specification of the original disclosure to which the '678 Patent claims priority (Dkt. #290 at p. 26). Plaintiff

notes that the '678 Patent is a continuation of the '929 Patent with an identical disclosure, not a continuation-in-part (Dkt. #306 at p. 28).

The Court previously addressed many of these issues in its order denying summary judgment under 35 U.S.C. § 102(b) (Dkt. #219) ("Plaintiff has demonstrated that the application that would become the '929 Patent existed prior to the alleged invalidating public use. Further, Plaintiff has shown evidence of why the written description in the earlier application supports the claims at issue. Due to the nearly identical specification, it is clear that the '678 Patent is supported in the '929 Patent specification to the same degree as in its own specification.").

The Court is not inclined to alter its previous ruling based on Defendants' arguments. Further, as previously discussed, at trial, the jury was given the opportunity to hear and weigh the evidence presented by both sides and found that the claims were not invalid for lack of written description support in the '678 Patent specification. It follows that the claims of the '678 Patent are necessarily supported to that same degree in the '929 Patent specification. Therefore, the '678 Patent is entitled to the filing date of the parent '929 Patent—January 3, 2006—and Defendants' motion for judgment as a matter of law on invalidity related to public use is denied.

*Invalidity – Patent-Eligible Subject Matter*

Defendants move for judgment as a matter of law of invalidity under 35 U.S.C. § 101 for failure to claim patent-eligible subject matter (Dkt. #290 at p. 31). This is not an issue tried to the jury, but merely a renewal of Defendants' previous motion, and incorporates the arguments from the earlier briefing (Dkt. #158). Plaintiff relies on its previous responsive briefing (Dkt. #170).

The Court previously determined that Defendants' invalidity argument under 35 U.S.C. § 101 was without merit (Dkt. #228), and based on arguments presented in the briefings, the Court

is not inclined to alter its previous ruling. Defendants' motion for judgment as a matter of law on invalidity under 35 U.S.C. § 101 is therefore denied.

*Jury's Determination of Damages*

Defendants argue that no reasonable juror could have concluded that Plaintiff met its burden of proof that it was entitled to damages in the form of lost profits or a reasonable royalty in the amount determined by the jury (Dkt. #290). Defendants note that Mr. Cobb's lost profits calculations provided a chart with three different levels of possible market share *assumptions*, rather than his own knowledge of the market (Dkt. #200 at p. 8; Trial Tr. 1/21/2016 PM at 55:23-56:17). Mr. Cobb presented to the jury his analysis on an assumption of a 95-percent market share between Motio and BSP (Trial Tr. 1/21/2016 PM at 55:23-56:17). Defendants argue that no evidentiary basis was shown at trial to justify the basis for these assumptions (Dkt. #290 at p. 35).

Mr. Cobb's projections corresponded to three different damage amounts: $1,624,323; $1,451,202; and $1,280,482 in lost profits related to possible profits Plaintiff might have realized (Dkt. #306, PTX 170). The jury did not simply rely upon Mr. Cobb's projections, but rather returned lost profits damages of $1,095,807.30 (Dkt. #263). Comparing this figure to Mr. Cobb's analysis, the jury returned a figure considerably smaller than any of his recommendations. The jury, therefore, did not rely solely on the testimony of Mr. Cobb in its determination of the amount of lost profits, but necessarily on broader understandings of the market and the products. The jury may have considered the testimony of Mr. Moore, for example, regarding the competition Motio has experienced in the market. *See* Trial Tr. 1/20/2016 PM at 11:10-15 (testimony of Motio's lack of competition against Envisn); Trial Tr. 1/20/2016 AM at 39:25-40:11 (testimony that Locus Solutions never sold a version control

product); Trial Tr. 1/20/2016 AM at 29:22-30:2 (Motio's experiences bidding primarily against Avnet alone, 90 percent of the time). Further, the jury may have considered testimony asserting that previous version control systems were not players in the modern version control market because their existing version control systems "were inefficient, were manual and were not very helpful." (Trial Tr. 1/21/2016 PM at 19:10-12).

Defendants argue there was insufficient evidence presented to support a "75 percent royalty rate" (Dkt. #290 at pp. 34-37). Defendants call into question Mr. Cobb's testimony, stating that "when determining a royalty base for a multi-component product, the patentee is obligated to apportion damages to only the patented features," but that Mr. Cobb failed to do so (Dkt. #290 at p. 35).

Defendants further argue that there was insufficient evidence to support a damages base (Dkt. #290 at p. 37). Defendants likely intend to convey, however, that they do agree with any damages base other that $160,781.63, a figure Defendants presented that represents sales for IVC in the United States without ICM (Trial Tr. 1/26/2016 PM at 141:11-13; DTX-1331). Defendants further contend that the only royalty figure supported by the evidence is 5.6 percent. *See* Trial Tr. 1/26/2016 PM at 136:24-139:9.

Plaintiff contends, and the Court agrees, that in actuality there is no evidence that the jury awarded a 75-percent royalty rate (Dkt. #306 at p. 37). The jury returned a reasonable royalty figure of $129,148.57 (Dkt. #263). The verdict does not describe the jury's pathway to this figure. If the jury accepted a royalty figure of 75-percent, this would lead to the conclusion that the jury determined a damages base of approximately $172,198. If Defendants intend to suggest that, in using the 75-percent figure, the jury accepted a 25-percent royalty rate, the jury's hypothetical damages base would be approximately $516,594. These figures do not resemble

Mr. Cobb's allegedly incorrect damages base. Further, Mr. Cobb did distinguish in his report damage calculations for IVC only and ICS for the jury's consideration should they determine that IVC was the "primary driver" of other modules (Trial. Tr. 1/21/2016 PM at 6:16-9:18). Plaintiff argues that DTX 1331, which contains Defendants' figure of $160,781.63 as a base, is not sufficient evidence because it was merely an exhibit to Mr. Parr's report, does not describe support for the entries, prove it is a business document, or explain if it excludes sales to foreign companies where the products were used in the U.S. or whether it excludes foreign headquartered companies entirely (Dkt. #306 at p. 38).

Under Federal Circuit law, "[a]lthough this analysis necessarily involves an element of approximation and uncertainty, a trier of fact must have some factual basis for a determination of a reasonable royalty. Any rate determined by the trier of fact must be supported by relevant evidence." *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995).

The jury heard arguments and evidence from both sides at trial and were tasked with weighing the credibility and degree to which they could rely upon the lost profits and reasonable royalty damage figures presented by the experts. The Court will only grant judgment as a matter of law on damages if there was insufficient evidence presented to support the jury's damages award. In this case, sufficient evidence was presented to support the award, and therefore Defendants' motion for judgment as a matter of law on damages is denied.[1]

*Motion for New Trial*

Defendants request, in the alternative, a new trial under FED. R. CIV. P. 50 and 59 because the verdict is not supported by the great weight of the evidence and the admission of evidence of alleged copying was unduly prejudicial. Regarding the first issue, as previously discussed, the

---

[1] Defendants raise other issues in regards to Mr. Cobb's testimony in a footnote (Dkt. #290 at p. 35). These arguments are largely the subject of Defendants' previous *Daubert* challenge, which the Court addressed (Dkt. #242). The Court is not inclined to alter its previous ruling.

jury heard at trial evidence from both parties on the issues and delivered a verdict that is supported by the evidence. Regarding evidence of copying, the Court is not inclined to alter its previous position that such evidence was relevant and properly admitted. The Court, therefore, finds that a new trial is not appropriate, and Defendants' motion for a new trial is denied.

## POST-TRIAL MOTIONS

*Prejudgment Interest*

Pursuant to 35 U.S.C. § 284, Plaintiff seeks prejudgment interest on its damages award (Dkt. #296 at pp. 8-9). Prejudgment interest should be awarded unless some justification exists for withholding such an award. *See DDR Holdings, LLC v. Hotels.com, L.P.*, No. 2:06-cv-42-JRG, 2013 WL 3187163, *1 (E.D. Tex. June 20, 2013). Compounded annually and using a prime rate of 3.25 percent, as requested by Plaintiff, a prejudgment interest award amounts to $139,204.12. Defendants request that the Court reduce this amount to account for the duration of the parties' jointly requested stay during this case (Dkt. #312 at p. 11). In *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, the Federal Circuit held that the district court may deny prejudgment interest for a period where the proceedings were stayed at the agreement of both parties, but not that such denial is required. 939 F.2d 1540, 1546 (Fed Cir. 1991). Further, another court in this District has noted that "[w]ithholding prejudgment interest 'is the exception, not the rule.'" *DDR Holdings*, 2013 WL 318716 at *3 (citing *Lummus Indus., Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 275 (1988)). The parties in this case mutually entered into the stay, and though no settlement was ultimately reached, there are no circumstances that suggest that it was anything but reasonable and justified. The Court, therefore, does not find that the circumstances of this case warrant a reduction of the prejudgment interest.

*Post-Judgment Interest*

Plaintiff asserts that it is entitled to post-judgment interest under 28 U.S.C. § 1961, which states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." The Court agrees, and finds that the post-judgment interest should be set at the statutory rate.

*Exceptional Case*

Plaintiff contends that this is an "exceptional case" and that it should receive attorneys' fees in accordance with 35 U.S.C. § 285 (Dkt. #296 at pp. 3-8). Under 35 U.S.C. § 285, courts are authorized to award attorneys' fees to the prevailing party in "exceptional cases." 35 U.S.C. § 285. "The purpose of § 285 is to compensate the prevailing party for the costs incurred as a result of the losing party's unreasonable conduct." *H-W Technology, Inc., v. Overstock.com, Inc.*, No. 3:12-CV-0636-G BH, 2014 WL 4378750, at *3 (N.D. Tex. Sept. 3, 2014) (citing *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013) ("[I]t is clear that the aim of § 285 is to compensate a defendant for attorneys' fees it should not have been forced to incur."). Federal Circuit law controls the issue of attorneys' fees in patent infringement cases. *See Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1343 (Fed. Cir. 2001) ("[A]warding [] attorney fees pursuant to 35 U.S.C. § 285 is an issue unique to patent law and therefore subject to Federal Circuit law."). There is a two-step process courts engage in when deciding whether to award attorneys' fees. First, the Court must determine whether the case is "exceptional" and, second, if the case is "exceptional," then the Court must determine whether the fee award is appropriate. *See Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1467-68 (Fed. Cir. 1997); *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1370 (Fed. Cir. 2004). The Supreme

Court clarified the standard by which district courts should assess whether an award of fees is warranted in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014).

Prior to *Octane*, the Federal Circuit had established a standard for determining whether a patent case was "exceptional." *See Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005). According to the Federal Circuit, "sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Id.* at 1381. However, in *Octane*, the Supreme Court found that standard "overly rigid." *Octane*, 134 S.Ct. at 1756. The Court instead looked to the plain meaning of the word "exceptional," holding that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the government law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* The Court held that "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* Further, "there is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the considerations we have identified." *Id.* (internal quotation marks omitted). The Court reasoned that the previous standard under *Brooks* "superimpose[d] an inflexible framework" onto the statutory text, which is "inherently flexible." *Id.* Thus, a district court "may award fees in the rare case in which a party's unreasonable conduct . . . is nonetheless so 'exceptional' as to justify an award of fees." *Id.* at 1757. The standard used to determine the awards is "by a preponderance of the evidence." *Id.* at 1758.

Plaintiff argues that Defendants took positions in litigation that were "unreasonable in light of the factual record." (Dkt. #296 at p. 3). Plaintiff reasons that (1) Defendants repeatedly

asserted baseless § 102 and § 103 arguments, relying on prior art and validity arguments that it presented to the PTAB on a petition for *Inter Partes* Review of the '678 Patent, which was denied as failing to demonstrate a likelihood of prevailing on its assertions as to the challenged claims (Dkt. #296 a p. 4); (2) Defendant repeated a baseless § 112 argument by filing a Motion for Summary Judgment that Claim 1 of U.S. Patent No. 8,285,678 (and its Dependents) are Invalid Under 35 U.S.C. § 102 (Dkt. #150), based largely on lack of support in the written description, when the Court had previously denied Defendants' Renewed Motion for Partial Summary Judgment of Invalidity Under 35 U.S.C. § 112 (Dkt. #89; Dkt. #146); and (3) Defendants served new non-infringement arguments that they refused to withdraw on the eve of trial—that is, in October and November of 2015 near the close of discovery—and which the Court determined should be excluded at trial (Dkt. #244).

Although Defendants presented arguments that failed in their PTAB petition, the PTAB merely stated that they failed to demonstrate a likelihood of prevailing on their challenges and there is nothing to suggest that Defendants made their § 102 and § 103 arguments frivolously or in bad faith. Further, Defendants failed convince the Court of their theory regarding a shifting of the burden of proof to demonstrate support in the written description, but the argument brought as a § 112 motion approached the issue from a very different standpoint that focused on the nature of the patent and its relationship to what ultimately became the '929 Patent, and was therefore not inappropriately duplicative, even if the Court followed a similar line of reasoning. Finally, though the Court ultimately did not allow Defendants' late-presented contentions, the Court does not find that Defendants' attempts to supplement their non-infringement positions and interrogatory responses to be exceptional.

Viewing the totality of the circumstances, as directed by *Octane*, it is clear that this case is not exceptional. Even though Defendants may have advanced a losing argument, in order to be exceptional, the arguments still must "stand out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the reasonable manner in which the case was litigated." *Octane*, 134 S.Ct. at 1756. Therefore, Defendants' request to declare case exceptional and aware attorneys' fees should be denied.

*Disputed Costs*

Pursuant to Federal Rule of Civil Procedure 54(d), costs are to be awarded to the prevailing party as a matter of course, unless the Court directs otherwise. Parties have largely agreed on the items to be included in Plaintiff's Bill of Costs, but have three remaining disputed costs (Dkt. #300). The first disputed cost concerns the cost of video depositions. 28 U.S.C. § 1920(2) permits the cost for video depositions to be recovered if the depositions were "necessarily obtained for use in the case." *See Eolas Techs. Inc. v. Adobe Systems, Inc.*, F.Supp.2d 803, 805 (E.D. Tex. 2012). Plaintiff seeks to recover the cost of obtaining a copy of five video depositions taken by Defendants and three video depositions of two witnesses that Defendants ultimately produced at trial. Defendants argue that these videos were not "necessarily obtained for use in the case," as evidenced by the fact that they were not used at trial. Though in *Eolas* the parties ultimately used portions of the transcriptions during trial, the court's logic for allowing costs turned on the necessity of obtaining the items, not the actual use. Actual use at trial may provide clear evidence that the items were necessarily obtained, but it makes little sense to disallow costs when, at trial, a party finds that a video no longer appears necessary. To rule so would incentivize parties to waste the jury's and the Court's time by trying

to present some small portion of each video in order not to forfeit the opportunity for costs. Rather, the Court should consider whether the videos were "necessarily obtained for use in the case," considering the circumstances at the time the videos were obtained. Though Defendants ultimately produced two of the witnesses to testify live at the trial, absent some sort of written stipulation that the individuals would be appearing, the Court finds that these video depositions were necessarily obtained for use in the case. Further, the Court agrees that, evaluated at the time Defendants took video depositions, the copies were necessarily obtained for use in the case, regardless of Defendants and Plaintiff's choices regarding their use at trial. Therefore, the video costs represented on the seven invoices should be included on Plaintiff's Bill of Costs.

Second, the parties dispute the inclusion of costs related to a deposition of Andrew Rachmiel. The parties are involved in an additional litigation pending in Illinois (Dkt. #300 at p. 4). The Court understands Mr. Rachmiel was noticed for a deposition in regards to this case for one day, and for a deposition in the Illinois case on a second day. Plaintiff ultimately only took one deposition, on the day associated with the Illinois case (Dkt. #300 at p. 4). Though Defendants disagree, Plaintiff argues that at the time, it was the parties' mutual understanding that the deposition was taken for both cases. Plaintiff seeks half of the costs in question in an attempt to equitably apportion the costs between the two cases. The Court finds, though, that the deposition was not taken as noticed and subpoenaed in this case, and the full costs associated with Mr. Rachmiel's deposition are rightly associated with the Illinois case. Therefore, the costs associated with the November 3, 2015, deposition of Mr. Rachmiel should not be included in Plaintiff's Bill of Costs.

Finally, the parties dispute costs associated with the work of Plaintiff's technical trial support vendor, RLM, provided in preparation for and during trial (Dkt. #300 at p. 5). Plaintiff

points to a decision of another court within the District in which the court allowed recovery of some of the costs related to technicians, and notes that the defendants' proposal in that case was "unreasonable" as failing to account for portions of the time the technician spent at trial and any of the time the technician spent preparing for trial. *See SynQor, Inc. v. Artesyn Technologies, Inc.*, No. 2:07-cv-497-TJW-CE, 2011 WL 4591893, at *3 (E.D. Tex. Sept. 30, 2011). The Court agrees generally, and Defendants appear to do so as well, that some costs associated with technical support are appropriate, and that "the use of technology support during trial, particularly in complicated cases such as this case, is an anticipated, useful, and necessary tool to assist in the efficient presentation of cases." *Id.* In *SnyQor*, however, the court noted that "the Court has not historically provided recovery for all costs related to technicians." *Id.* In *Coats v. Penrod Drilling Corp.*, the Fifth Circuit affirmed a district court's denial of travel expenses, "blow-ups" used at trial, and video technician fees incurred for video depositions. 5 F.3d 877, 891 (5th Cir. 1993).

Defendants propose to cover the amount of the invoice provided by Plaintiff associated with on-site support by Plaintiff's trial technician: $20,500. The Court agrees with Defendants that the appropriate cost concerns the on-site support, and not fees associated with "new graphics," "putting together slides," and similar fees. The Court finds that Defendants neglect several fees incurred in preparation for trial that relate directly with the technician's on-site support, such as "Courtroom A/V equipment setup," but that are lumped together with other non-recoverable fees such as "Finding board vendor" (Dkt. #300, Ex. 3 at p. 3). However, while Plaintiff proposed 75-percent of the costs incurred by the trial technicians, Defendants' proposal to cover 100 percent of the fees invoiced with on-site support adequately compensates Plaintiff for any shortcoming regarding the applicable pre-trial costs. The Court, therefore, finds

Defendants' proposal reasonable, and the further $11,011.25 sought by Plaintiff should not be included in Plaintiff's Bill of Costs.

*Permanent Injunction*

Plaintiff seeks to permanently enjoin Defendants from infringing the '678 Patent (Dkt. #297). The decision to grant or deny a request for injunctive relief is within the discretion of the district court, and should be exercised consistent with traditional principles of equity. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006). A party seeking a permanent injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the [parties], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* at 391.

Plaintiff argues that it has suffered an irreparable injury (Dkt. #297 at p. 4). Plaintiff points to evidence of direct competition in the market. As discussed above, the record contains substantial evidence to support finding that Plaintiff and Defendants are direct competitors. In addition to Mr. Moore's previously cited testimony, expert for Defendants, Mr. Parr, testified that "I said [in my report] that Motio and Avnet are competitors. . . the two companies are competitive" (Trial Tr. 1/26/2016 PM at 157:19-22). Mr. Parr further testified that Avnet and Motio go after the same customers, and affirmed that they had lost sales to each other (Trial Tr. 1/26/2016 PM at 157:19-22). Mr. Evans, a regional manager from Avnet, testified about the "sales cycle," or the selling of Avnet products in the marketplace, and the fact that when selling their products, they competed with Motio (Trial Tr. 1/21/2016 PM at 87:19-88:2). Further, in its damages award, the jury found direct competition. "Direct competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm without enforcement of

26

the right to exclude." *Presidio Components, Inc. v. Am. Tech Ceramics Corp.*, 702 F.3d 1351, 1362 (Fed. Cir. 2012). Defendants assert that Plaintiff fails even to demonstrate causation, that the infringement causes the injury (Dkt. #311 at p. 8). The Court is convinced that the trial record supports that Plaintiff has demonstrated a connection between the patented features and the demand for the infringing product. Considering the substantial evidence of direct competition in the same market, and consistent with the jury's finding of lost profits, the Court finds that Plaintiff has supported a finding of irreparable harm, and this factor supports injunctive relief.

Plaintiff claims that monetary damages are inadequate (Dkt. #297 at p. 7). Plaintiff notes testimony that Plaintiff would not license its product to a competitor, discussed the possible loss of market share, and the possible damage to brand recognition in the case of monetary relief without an injunction. The Court finds that, due to Plaintiff's business model and the difficulties of determining an adequate model of possible future losses, this factor favors injunctive relief.

In regards to the balance-of-hardships factor, Plaintiff argues that Defendants' size and range of products in comparison to Plaintiff supports injunctive relief. The evidence presented at trial suggests that Plaintiff's product that embodies the '678 Patent is the most important part of a relatively small business, while the accused products make up a much smaller portion of Defendants' business. The respective hardship, therefore, clearly favors injunctive relief.

Plaintiff contends the public interest is served by the issuance of injunctive relief, and argues that it is in the public's interest to enforce patent rights and encourage innovation, and at the very least, an injunction poses no conceivable threat to public safety (Dkt. #297 at p. 10). The Court finds that this argument is not particularly convincing that the public interest would be

particularly served, but also finds that the public interest would not be disserved by a permanent injunction.

The Court, therefore, finds that injunctive relief is appropriate in this case. However, the Court does not approve of the language of Plaintiff's proposed injunction. In particular, the Court notes that the language appears to be somewhat over broad and unnecessarily and inappropriately involves the demand of notification of past customers. Understanding that the Court finds that injunctive relief is appropriate, the Court orders the parties to meet and confer and submit a new proposal for the language of the injunction, within twenty-one days from the issuance of this order.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Renewed Motions for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b) is hereby **DENIED**.

It is further **ORDERED** that Motio's Motion to Declare Case Exceptional and Award Attorneys' Fees, and Pre and Post-Judgment Interest (Dkt. #296) is hereby **GRANTED IN PART** and **DENIED IN PART**. The Court finds that the case is not exceptional, but orders that Plaintiff is entitled to pre and post-judgment interest.

It is further **ORDERED** that Plaintiff's Motion to Approve Disputed Costs (Dkt. #300) is hereby **GRANTED IN PART** and **DENIED IN PART**. The contested costs of the seven video depositions should be included on Plaintiff's Bill of Costs, the costs associated with the November 3, 2015, deposition of Mr. Rachmiel should not be included in Plaintiff's Bill of Costs, and the additional $11,011.25 sought by Plaintiff regarding technical support should not be included in Plaintiff's Bill of Costs.

It is further **ORDERED** that Plaintiff Motio, Inc.'s Motion for Permanent Injunction (Dkt. #297) is hereby **GRANTED**, with the stipulation that the parties are to submit a proposed injunction within twenty-one days from the issuance of this order.

**SIGNED this 22nd day of August, 2016.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE